# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARILYN LOU WOODS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

    Defendant.

Case No. 16-4059-DDC

## MEMORANDUM AND ORDER

Under 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, as amended. On September 30, 2016, plaintiff filed a brief (Doc. 9) seeking judicial review of the Commissioner's decision. The Commissioner has filed a brief in opposition (Doc. 12) and submitted the administrative record (Doc. 8-1 to -15) contemporaneously with her Answer (Doc. 8). When plaintiff filed her reply (Doc. 13), this matter became ripe for determination. Having reviewed the administrative record and the briefs of the parties, the court reverses the decision of the Commissioner, orders that judgment shall be entered according to the fourth sentence of 42 U.S.C. § 405(g), and remands the case to the agency for further proceedings consistent with this Order.

---

[1]     On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of the Social Security Administration and is automatically substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

## I. Factual Background and Procedural History

Plaintiff applied for Social Security Disability ("SSD") benefits alleging disability beginning February 15, 2001. (R. 138) Plaintiff first filed her case on October 8, 2008. (*Id.*) Since then, her claim has gone through three rounds of review. The latest round produced a decision by an Administrative Law Judge ("ALJ") denying her benefits on February 26, 2016 under sections 216(i) and 223(d) of the Social Security Act. (R. 1014); 42 U.S.C. §§ 416(i), 423(d). Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the final decision denying her SSD benefits.

## II. Legal Standard

### A. Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions by the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." Judicial review of the Commissioner's denial of benefits is limited; it asks only whether substantial record evidence supports the factual findings and whether the Commissioner applied the correct legal standards. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted). But, it must be "more than a scintilla," although it need not be a preponderance. *Id.* While the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the

evidence nor substitute their judgment for the Commissioner's. *Id.* (citation and internal quotation marks omitted). But courts also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.* (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)). But such failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases. *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

B.     **Disability Determination**

Claimants seeking Social Security disability benefits carry the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)). As summarized by the Tenth Circuit, this familiar five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)–(g). The claimant bears the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'" *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d

748, 751 (10th Cir. 1988)). This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

## III. Discussion

Plaintiff here challenges the ALJ's findings in three ways. First, she argues the ALJ erred by finding that she does not meet the requirements of Section 12.05C of the Listing of Impairments. Second, she argues the ALJ assigned improper weight to the medical opinions in the record. Third, she argues the ALJ erred by finding that claimant's sleep apnea is not severe. Plaintiff also argues that the court should not remand the case, but instead award benefits. The court will address all these arguments in sections A through D, below.

### A. Section 12.05C Listing

Plaintiff argues the ALJ erred by finding plaintiff did not meet the 12.05C listing. Specifically, plaintiff contends that the ALJ improperly found that plaintiff did not have deficiencies in her adaptive functioning.

As germane here, § 12.05C provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.[2]

---

[2] Although the Social Security Administration amended Listing 12.05C since the ALJ issued her decision, the court applies Listing 12.05C as it read when the ALJ issued her decision. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (providing the new Listing Criteria only applies "to new

5

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  The ALJ agreed that plaintiff meets paragraph C. (R. 1025)  However, the parties disagreed whether plaintiff has deficiencies in adaptive functioning.

"Adaptive functioning refers to how [a claimant] learn[s] and use[s] conceptual, social, and practical skills in dealing with common life demands." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00H(3)(a).  The four major psychiatric organizations have established their own definition of adaptive functioning, but the regulations have not adopted a definition from any of the major organizations.  *See* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, 20022 (Apr. 24, 2002) (rejecting a recommendation to adopt the Diagnostic and Statistical Manual of Mental Disorders's definition of mental retardation and "allowing use of any of the measurement methods recognized and endorsed by the professional organizations").  However, an ALJ cannot improvise her own definition of "adaptive functioning."  *Barnes v. Barnhart*, 116 F. App'x 934, 942 (10th Cir. 2004).  Instead, the ALJ at least must provide some indication of the definition she used to determine if a claimant has deficits in adaptive functioning.  *Id.*

In *Rodriguez v. Astrue*, No. 07-CV-00906-LTB, 2008 WL 1957742 (D. Colo. May 2, 2008), the court remanded a case when the ALJ concluded the claimant had not shown deficits in adaptive functioning because of the claimant's "'strong work history.'"  *Id.* at *6 (quoting ALJ decision).  But, the ALJ did not elaborate further.  The district court reversed the ALJ's decision because "the order lacks any application of a definition or standard used to assess defects in adaptive functioning."  *Id.* (citing *Barnes*, 116 F. App'x at 942); *see also Havenar v. Colvin*, No. 13-CV-692-PJC, 2015 WL 362450, at *4 (N.D. Okla. Jan. 27, 2015) (remanding the ALJ's

---

applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date").

decision because the ALJ did not clearly articulate what methodology he used to determine the claimant had no deficit in adaptive functioning). In contrast, our court affirmed an ALJ's finding that a claimant had no deficits in adaptive functioning because "there is no medical opinion evidence in the record that plaintiff has a degree of functional limitation or deficits in adaptive functioning that meet or equal listed impairment 12.05C." *Bouton v. Astrue*, No. 07-4039-JAR, 2008 WL 627469, at *9 (D. Kan. Mar. 4, 2008).

This court also has noted that a claimant can "'achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance . . . .'" *Gross v. Astrue*, No. 11-1256-JWL, 2012 WL 2449900, at *8 (D. Kan. June 26, 2012) (emphasis omitted) (quoting Am. Psychology Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 43 (4th ed., Text Revision 2000)). Notably, Judge Lungstrum held in *Gross* that claimants can function independently and still meet Listing 12.05C because Listing 12.05C requires not only deficits in adaptive functioning but also "another severe mental or physical impairment." *Id.* at *10.

Here, the ALJ failed to articulate what definition of "adaptive functioning" she used to evaluate plaintiff. The ALJ found that plaintiff attended regular education 70% of the time and scored an 84 on a verbal IQ test. (R. 1025) But the ALJ did not connect these findings to a definition of adaptive functioning. The ALJ also described plaintiff as a "high functioning adult." (R. 1025) But, as noted above, that is not determinative of the issue. In addition, the ALJ partially based her assessment of claimant's "adaptive functioning" on a nonexamining agency medical expert's opinion. (R. 1026) That medical expert did not elaborate, however, why claimant had no deficiencies in her adaptive functioning. (*See* R. 1052, 1055) The medical expert simply provided a conclusory answer. The ALJ cannot give weight to a nonexamining

7

source's opinion when the source does not provide supporting explanations. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Therefore, the ALJ erred by finding plaintiff did not meet the Section 12.05C Listing.

The Commissioner advances three reasons why the court should affirm the ALJ's ruling. First, the Commissioner argues the ALJ soundly supported her decision on an opinion rendered by Dr. Genevieve Spiegel, Psy.D, the reviewing medical expert. This is true, but the ALJ herself failed to articulate how she evaluated plaintiff's deficits in adaptive functioning. Nor, for that matter, did Dr. Spiegel. (*see* R. 1052, 55) Second, the Commissioner argues the ALJ relied on Dr. Lynn Lieberman's, Ph.D diagnosis of borderline intellectual functioning rather than intellectual disability. Doc. 12 at 7. Because borderline intellectual functioning does not require a finding of deficits in adaptive functioning—as intellectual disability does—the Commissioner argues that Dr. Lieberman must have concluded that plaintiff lacks any deficits in adaptive functioning. *Id.* But, the ALJ never referenced Dr. Lieberman's opinion in her discussion of plaintiff's adaptive functioning. (*see* R. 1025–26) The court cannot accept a post-hoc rationalization formulated by the Commissioner. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Last, the Commissioner argues that no doctor diagnosed plaintiff with deficits in adaptive functioning. Doc. 12 at 8. This argument suffers from the same flaw as the second argument, *i.e.*, the ALJ never justified her finding on the basis that no doctor diagnosed plaintiff with deficits in adaptive functioning. Thus, the court holds that the ALJ committed error by improperly evaluating whether Ms. Woods met the 12.05C Listing.

**B. Medical Opinions**

An ALJ must consider all medical opinions. *See* 20 C.F.R. § 404.1527(c). The ALJ also must discuss the weight she assigns to such opinions. *See id.*

8

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The regulations identify three types of "acceptable medical sources": (1) treating sources, *i.e.*, medical sources who have treated or evaluated the claimant or have had "an ongoing treatment relationship" with the claimant; (2) nontreating sources, *i.e.*, medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, *i.e.*, medical sources who render an opinion without examining the claimant. *See id.* § 404.1527; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011).[3] In general, the Commissioner gives more weight to opinions from examining sources than to opinions from nonexamining sources. 20 C.F.R. § 404.1527(c)(1). And the Commissioner generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2).

### 1. Dr. Golon

As an initial matter, the parties disagree whether Dr. Stan Golon, M.D. is a treating source. A treating source is a source who has "an ongoing treatment relationship with [the claimant]." *Id.* § 404.1527(a)(2). The Commissioner argues that Dr. Golon has no ongoing

---

[3] These categorizations only apply to claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

9

relationship with plaintiff because he saw her just once. Plaintiff argues that Dr. Golon has an ongoing relationship with plaintiff because Dr. Golon supervised plaintiff's treatment.

The Ninth Circuit addressed this very issue in *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030 (9th Cir. 2003). *Benton* held that when a doctor combines his first-hand knowledge with that of the treatment team he or she supervises to form an opinion, the doctor's opinion is entitled to great weight, if not controlling weight. *Benton*, 331 F.3d at 1039. *Benton* emphasized how a supervising physician has "the opportunity to direct and communicate with the treatment team over time, and is presumably well placed to know their skills, abilities, and therapeutic techniques." *Id.* The court finds *Benton* persuasive.

Here, Dr. Golon signed plaintiff's treatment notes in October 24, 2008 (R. 516–17), February 9, 2009 (R. 658), May 6, 2009 (R. 691), and January 11, 2010 (R. 763).[4] He performed an exam on August 23, 2010. (R. 773) While Dr. Golon examined plaintiff personally just once, he reviewed treatment notes produced by his staff for more than a year. Thus, Dr. Golon had an ongoing treatment relationship with plaintiff and he qualifies as a treating physician.

The Commissioner argues that this case is analogous to *Branum v. Barnhart*, 385 F.3d 1268 (10th Cir. 2004). In *Branum*, the Tenth Circuit affirmed an ALJ's decision to reject a doctor's opinion who worked at a clinic that the claimant frequented but who had seen the claimant just a few times. *Id.* at 1275. But in that case, the ALJ still applied the treating source analysis before giving the doctor's opinion no weight. *Id.* at 1276. The ALJ did not reject

---

[4] Plaintiff also argues Dr. Golon reviewed plaintiff's treatment plan in November 2008. Plaintiff claims this appears on page 621 of the Record. However, the court does not find any signature from Dr. Golon or medical record from November 2008 on page 621. Therefore, the court does not consider this occasion as a time when Dr. Golon reviewed plaintiff's treatment notes.

10

outright the idea that the doctor was not a treating source. *See id.* In contrast, the ALJ did not perform the treating source analysis properly here, as explained below.[5]

The Commissioner will give medical opinions of treating sources controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). The ALJ must consider these two factors when determining whether a treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted). First, the ALJ must consider whether such an opinion is well-supported. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If it has adequate support, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.* An ALJ "may decline to give controlling weight to the opinion of a treating physician where [the ALJ] articulate[s] specific, legitimate reasons for his decision." *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and internal quotation marks omitted).

Even where the ALJ's inquiry determines that a medical opinion does not deserve controlling weight, the inquiry does not end. *See Krauser*, 638 F.3d at 1330; *Watkins*, 350 F.3d at 1300. *Krauser* explains the next step:

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

---

[5] The court also finds illuminating that the ALJ described Dr. Golon as a treating psychiatrist. (R. 1026) At the very least, the ALJ considered Dr. Golon a treating psychiatrist and should have analyzed Dr. Golon's opinion accordingly. *See Jenkins v. Astrue*, No. 08-4078-JAR, 2009 WL 1010870, at *10 (D. Kan. Apr. 14, 2009) (holding a medical report produced by a nurse-practitioner and signed by a supervising physician should be evaluated as a treating source opinion because the ALJ stated it was based upon "a treating relationship with claimant").

11

638 F.3d at 1330, *accord Watkins*, 350 F.3d at 1300–01. Unless the ALJ gives the treating source opinion controlling weight, it must evaluate the medical opinion in accordance with the factors contained in the regulations. 20 C.F.R. § 404.1527(c); Policy Interpretation Ruling Titles II & XVI: Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96–5p, 1996 WL 374183, at *1, *3 (S.S.A. July 2, 1996). Those factors are:

> (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citation omitted); 20 C.F.R. § 404.152(c)(2)–(6). After considering these factors, the ALJ must give reasons in the decision for "the weight he ultimately assigns the [medical] opinion." *Watkins*, 350 F.3d at 1301 (citation and internal quotation marks omitted). The ALJ need not apply a factor-by-factor analysis, however, so long as the decision is "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350 F.3d at 1300). When an ALJ completely rejects a treating source's opinion, the ALJ must provide specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1301.

An ALJ must give a treating physician's opinion substantial weight "unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90 (10th Cir. 1995). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Id.* at 290 (citation and internal quotation

12

marks and alterations omitted). A reviewing court may reverse and remand a Social Security case when the ALJ has failed to apply the correct legal standards when weighing the opinion of a treating physician. *Id.* at 289.

Here, the ALJ weighed Dr. Golon's opinion twice: once at step three and once at step four. (R. 1026, 1030) In both places, the ALJ gave Dr. Golon's opinion no weight. (R. 1026, 1030) At step three, the ALJ explained why Dr. Golon's opinion deserved "no weight because Dr. Golon only examined the claimant on one occasion when he issued his opinion and it is inconsistent with treatment notes that indicate the claimant's symptoms were only mildly disturbed." (R. 1026) This explanation does not suffice. First, the ALJ did not follow the two-step process used to determine if Dr. Golon's opinion deserved controlling weight. *See Watkins*, 350 F.3d at 1300. And, the ALJ did not articulate "specific, legitimate reasons for [the ALJ's] decision." *Id.* at 1301. While the ALJ noted that Dr. Golon's opinion was inconsistent with the treatment notes, the ALJ never explained how they were inconsistent.

The Commissioner notes that the treatment notes record symptoms as no more than "mildly disturbed," while Dr. Golon's opinion opines that plaintiff "had marked problems with social functioning and frequent deficiencies in concentration, persistence, or pace." But the Commissioner never explains why these treatment notes are inconsistent with Dr. Golon's findings. The Commissioner directs the court to medical records that record mood, sleep, appetite, energy, activity, thought, and speech. (*see, e.g.*, R. 680) Dr. Golon opined that plaintiff had moderate restrictions on her daily living activities, marked difficulties in maintaining social functioning, frequent deficiencies in concentration, and episodes of deterioration in work or work-like settings once or twice. (R. 774) The court does not find these observations as inconsistent with the treatment notes because they measure different things. And even if they

13

were inconsistent, the ALJ must explain why Dr. Golon's opinion is inconsistent with these notes. Thus, the ALJ erred when she improperly analyzed Dr. Golon's opinion at step three.

At step four, the ALJ gave Dr. Golon's opinion no weight because Dr. Golon's "opinion is internally inconsistent." (R. 1030) While this analysis deviates from the two-step approach articulated by *Robinson*, 366 F.3d at 1083, the court agrees with the ALJ that Dr. Golon's opinion does not match the directions of the questionnaire he completed, and thus is inconsistent. The questionnaire requires, at a minimum, that two functions must meet the Listing's requirements to satisfy a Listing Criteria. (*see* R. 774) Dr. Golon did not identify any functions that met the Listing requirement. (*id.*) Yet, Dr. Golon opined that plaintiff met Listing 12.04B. (*id.*) On remand, the ALJ must track the correct analysis applied to a treating physician and explain what weight Dr. Golon's opinion is entitled to receive.

    **2.    Dr. Lieberman**

Plaintiff argues the ALJ committed additional error when she failed to account for Dr. Lieberman's opinion about the RFC. Specifically, plaintiff argues that the ALJ did not consider Dr. Lieberman's piecemeal requirement and did not explain why she omitted that from her RFC determination. The court finds no error, here. Plaintiff argues that piecemeal is defined as "piece by piece; in small amounts or degrees." *Id.* (quoting *piecemeal*, Webster's New Twentieth Century Dictionary, Unabridged (2d ed. 1983)). The ALJ found plaintiff had the RFC to perform "simple, routine, repetitive work tasks." (R. 1026) The ALJ also assigned great weight to Dr. Lieberman's opinion. (R. 1030) The court thus finds the RFC and Dr. Lieberman's opinion are consistent with one another. "Piecemeal" encompasses work that is "simple, routine, and repetitive." Thus, the ALJ committed no reversible error when she analyzed Dr. Lieberman's opinion.

### 3. Dr. Prout

Plaintiff next argues the ALJ committed reversible error because she did not consider the opinion of Dr. Maurice Prout, Ph.D., a State agency psychologist consultant, during step three or four. The ALJ gave little weigh to Dr. Prout's opinion because Dr. Prout did not indicate whether he considered plaintiff's drug and alcohol abuse when forming his opinion. (R. 1023) The ALJ did not err here. A claimant's substance abuse affects the claimant's eligibility for disability status. Policy Interpretation Ruling Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013). Specifically, the ALJ must determine whether a claimant would not be disabled if he or she were not abusing substances. *Id.* If a reviewing doctor does not consider a claimant's substance abuse history when forming an opinion about the claimant's disability status, the ALJ should not give that doctor's opinion weight because the reviewing doctor may have overlooked that claimant's impairments would disappear if the substance abuse stopped. Here, it is unclear what affect plaintiff's substance abuse played into Dr. Prout's opinion. (*see* R. 1010) Thus, the ALJ did not commit reversible error by assigning little weight to Dr. Prout's opinion. Also, the ALJ did not need to explicitly repeat this at step four, contrary to plaintiff's assertion. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012).

### 4. Dr. Spiegel

Lastly, plaintiff argues that the ALJ erred by giving significant weight to Dr. Spiegel's opinion. Doc. 9 at 32. Dr. Spiegel was one of the non-examining physicians who reviewed the record. (R. 1048) An ALJ only may give weight to nonexamining source opinions to the extent the nonexamining source supports her opinion. 20 C.F.R. § 404.1527(c)(3). Plaintiff argues the ALJ committed two errors by considering Dr. Spiegel's opinion: (1) Dr. Spiegel's opinion that

plaintiff could function at an eighth grade level is not supported by the record, and (2) Dr. Spiegel offered numerous conclusory opinions, including the opinion that plaintiff's diagnoses were decreasing over time. As for plaintiff's first argument, the court finds that this opinion is supported by the record. Dr. Spiegel opined that plaintiff could function at an eighth grade level because she completed eighth grade and her IQ scores matched those of someone with an eighth grade education. (R. 1062) Plaintiff argues that no evidence "supports a conclusion that plaintiff is currently functioning, or has ever functioned, at an eight[h] grade level." Doc. 9 at 33. But, at steps three and four—which is where the ALJ considered Dr. Spiegel's opinion—plaintiff has the burden to prove disability. *Wall*, 561 F.3d at 1052. Plaintiff thus must identify evidence that plaintiff is below an eighth grade level. This opinion is thus supported by and consistent with the record.

Plaintiff's second argument has merit. Dr. Spiegel and the ALJ found that plaintiff's diagnoses had decreased. (R. 1027, 1055) But, this ignored plaintiff's treatment notes from June 5, 2012 indicating that plaintiff still had posttraumatic stress disorder and bipolar disorder. (R. 949) The Commissioner argues plaintiff's argument lacks merit because plaintiff does not challenge the ALJ's underlying rationale for accepting Dr. Spiegel's opinion. This is incorrect. Plaintiff has identified part of the record that is directly contradictory to Dr. Spiegel's opinion. The ALJ gave Dr. Spiegel's opinion great weight because it was consistent with the record. (R. 1029) Thus, the ALJ improperly gave weight to Dr. Spiegel's opinion.

### C. Severe Impairments

Plaintiff argues that the ALJ erred by finding that her sleep apnea is not a severe impairment. An ALJ commits no per se reversible error when he or she fails to find a specific impairment is severe, as long as the ALJ finds some impairments to be severe. *Allman v. Colvin*,

16

813 F.3d 1326, 1330 (10th Cir. 2016). However, an ALJ must consider whether non-severe impairments combined with all of the claimant's impairments affect a claimant's RFC. Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Here, it does not appear that the ALJ considered plaintiff's sleep apnea. But, the Commissioner is correct that plaintiff has not identified a specific effect sleep apnea has on plaintiff's RFC. On remand, both parties must develop this question more fully.

### D. Remand or Award Benefit

Finally, plaintiff argues that the court should award her benefits instead of remanding this case. Doc. 9 at 36. When a court reverses an ALJ's decision, the court has the discretion to remand for further proceedings or immediately award benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). When making this determination, the court considers "the length of time the matter has been pending . . . and whether or not given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." *Id.* (internal quotation marks and citations omitted). A court should award benefits immediately only when the administrative record is fully developed and substantial and uncontradicted evidence on the record as a whole establishes that the claimant is disabled and entitled to benefits. *Farmer v. Astrue*, 832 F. Supp. 2d 1293, 1302 (D. Kan. 2011) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184–85 (3d Cir. 1986)).

Here, plaintiff has been waiting for eight years for benefits. This favors an immediate award. But, the record contains little uncontradicted evidence. For instance, and contrary to plaintiff's argument, contradictory evidence exists over plaintiff's deficits in adaptive functioning. Also, there are contradictory medical opinions about plaintiff's RFC. These

substantial and material contradictions outweigh the long delay in awaiting a determination. The court thus remands this case to the ALJ for further proceedings.

IV. **Conclusion**

Based on the above analysis, the court reverses the Commissioner's decision and remands the case. The court directs that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g), reversing the Commissioner's decision and remanding the case for further proceedings consistent with this order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff Social Security Disability benefits is **REVERSED** and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case to the agency for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**Dated this 27th day of September, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**